**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANET HELBLING, in her capacity as the personal representative of the ESTATE OF JOHN D. HELBLING, deceased. | ) ) ) | Civil Action No. 2:24-cv-01192-RJC |
| | ) | |
| Plaintiff, | ) | Judge Robert J. Colville |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT PEBBLES, JR. and LIBERTY TOWNSHIP | ) ) | |
| | ) | |
| Defendants. | | |

## OPINION

Robert J. Colville, United States District Judge

Presently pending before the Court is a Motion to Dismiss (ECF No. 10) filed by Defendants Robert Pebbles, Jr. ("Pebbles") and Liberty Township ("the Township"), (collectively, "Defendants"). Defendants argue that the Amended Complaint ("the Complaint") (ECF No. 9) filed by Plaintiff Janet Helbling, in her capacity as the personal representative of the Estate of John D. Helbling, fails to state a claim and move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion to Dismiss will be denied.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

### I.    Procedural History and Factual Allegations

This action arises out of the demolition of a renovated building ("the Building") owned by Plaintiff's decedent John D. Helbling ("Mr. Helbling") on his property at 2892 Mercer Butler Pike, Grove City, 16127 ("the Property"). A Complaint was filed on August 21, 2024. (ECF No. 1). Plaintiff filed the operative Amended Complaint on October 18, 2024. (ECF No. 9). Defendants filed their Motion to Dismiss, along with a Brief in Support (ECF No. 10), on November 1, 2024.

Plaintiff filed a Brief in Opposition (ECF No. 12) on November 21, 2024. Defendants filed a Reply Brief in Support of the Motion to Dismiss (ECF No. 14) on December 2, 2024. The Motion to Dismiss has been fully briefed and is ripe for disposition.

This action involves a number of interactions between Mr. Helbling and Pebbles that began in 2000 and concluded in 2023.  It bears initially noting that Plaintiff alleges that the Township had full knowledge of all of Pebbles's actions towards Mr. Helbling at all relevant times, and that it was a willing participant in those actions. (ECF No. 9 ¶ 55). Moreover, Plaintiff alleges that the Township, without regard to local ordinances or the law, maintained a policy and/or custom of allowing Pebbles to act as the alleged Township building code official and/or inspector, despite the fact that another individual, Jeffery Richardson, occupied that position. (ECF No. 9 ¶ 57). In the Complaint, Plaintiff sets forth the following factual allegations as to the events in question:

Mr. Helbling acquired the Property, including the Building, which was formerly a general store, at auction in or around the year 2000. (ECF No. 9 ¶ 10). Mr. Helbling planned on turning the Building into apartment-style living for the nearby universities. (ECF No. 9 at ¶ 16).  Around the time that he acquired the Property, Mr. Helbling contracted with Bill Hughes ("Hughes") to place a tarp over a damaged portion of the Building's roof to prevent further damage to the Building. (ECF No. 9 ¶ 12). During the course of Hughes's work, a dispute arose between he and Pebbles, who purported to hold authority respecting Township building approval, concerning the issue of whether a building permit was required to complete such work. (ECF No. 9 ¶ 13). Despite this initial dispute, Hughes completed his work without further disturbance from Pebbles, and no additional work was performed at the Property for several years. (ECF No. 9 ¶ 14).

In late 2020, Mr. Helbling entered into a series of contracts with G&J Waterproofing Inc. ("G&J") for renovations to the Building. (ECF No. 9 ¶ 17). The work included the demolition and

reconstruction of a foundation wall for $29,000.00, as well as the installation of new electrical equipment, a furnace, and ductwork for $20,000.00. (ECF No. 9 ¶ 18-20, Exhibit A-B). Throughout this time, G&J was in communication with Jeffery Richardson, the Township building inspector. (ECF No. 9 ¶ 21). However, in late 2020, "Pebbles visited the Property and informed representatives of G&J that he was in charge of the town and the building in question." (ECF No. 9 ¶ 22). During this visit, a dispute arose between Pebbles and G&J, during which Pebbles also informed G&J of his previous dispute with Hughes in 2000. (ECF No. 9 ¶ 23-24). Pebbles subsequently issued multiple stop-work orders on the Property and further required G&J and/or Mr. Helbling to perform additional unnecessary work. (ECF No. 9 ¶ 25). Additionally, Pebbles allowed and/or ordered work to be performed on the Property, only to later deny the issuance of the requisite permit. (ECF No. 9 ¶ 26).

Pebbles further claimed that the Property was contaminated by an alleged gas line that would prevent the installation of a septic tank. (ECF No. 9 ¶ 27). Thereafter, the Pennsylvania Department of Environmental Protection ("PaDEP") determined that there was no contamination on the Property. (ECF No. 9 ¶ 28). With this information, Pebbles approved the installation of a 15-inch pipe for a septic tank, which was installed by G&J. (ECF No. 9 ¶ 29). The pipe was later removed by an unknown party. (ECF No. 9 ¶ 30). Plaintiff asserts that the only entities in or around the Property in possession of the equipment necessary to remove the pipe at that time were G&J and the Township. (ECF No. 9 ¶ 31). In July of 2021, Pebbles informed G&J that the renovations to the Building would never be completed. (ECF No. 9 ¶ 32).

In August of 2021, Pebbles ordered that G&J demolish a barn located on the Property, informing the contractor that a permit would be required for such work. (ECF No. 9 ¶ 33-34). However, Pebbles refused to grant G&J the necessary permit, and, as a result, work ceased on the

Property until 2023. (ECF No. 9 ¶ 34-35). In early 2023, Pebbles provided the permit required to demolish the barn. (ECF No. 9 ¶ 36). On or about January 13, 2023, Mr. Helbling and G&J entered into a contract for the demolition of the barn and reinstallation of floors for the Building for $46,800.00. (ECF No. 9 ¶ 37, Exhibit C).

Pebbles made further verbal demands in early 2023, ordering G&J to tear down the Building in its entirety, in addition to the barn, within thirty (30) days. (ECF No. 9 ¶ 39). Pebbles threatened that, if Mr. Helbling refused to comply with the verbal demands, he would be assessed substantial fines. (ECF No. 9 ¶ 40). Mr. Helbling was not provided with any written notices of violation or any other written documentation stating the Property was not in compliance with applicable ordinances and/or building codes at the time of the verbal demand to demolish the Building, nor was Mr. Helbling provided an opportunity to present his case at a Township hearing. (ECF No. 9 ¶ 41). Additionally, Pebbles never issued a written notice that the Building was unsafe. (ECF No. 9 ¶ 42).

At the time Pebbles made these demands, Mr. Helbling was in the hospital. (ECF No. 9 ¶ 43). Plaintiff alleges that these demands caused Mr. Helbling great anxiety, stress, concern, and distress, worsening his condition. (ECF No. 9 ¶ 44). Feeling as though he had no other option, Mr. Helbling ordered G&J to demolish the Building to avoid substantial fines. (ECF No. 9 ¶ 45). However, on or about March 12, 2023, Pebbles refused to allow the demolition to go forward, instead informing Mr. Helbling that underground storage tanks supposedly present on the Property constituted an environmental hazard, and that Mr. Helbling would be fined if these storage tanks were not removed. (ECF No. 9 ¶ 46). Mr. Helbling again contracted with PaDEP to assess the issue, who determined that no such environmental hazard existed. (ECF No. 9 ¶ 47). On or about April 6, 2023, G&J began demolition of the Building. (ECF No. 9 ¶ 48). Pebbles then informed

Mr. Helbling that, unless the Building was torn down within seventy-two (72) hours, Mr. Helbling would face fines of $5,000.00 a day, a lien would be placed on the Property, and Mr. Helbling would be jailed. (ECF No. 9 ¶ 49). As a result, Mr. Helbling ordered G&J to perform the work at an emergency, increased rate, resulting in significant additional costs. (ECF No. 9 ¶ 50).

Pebbles later contacted G&J regarding debris that was purportedly present on the road adjacent to the Property as a result of the demolition, verbally threatening additional fines if not addressed. (ECF No. 9 ¶ 51). Further, Mr. Helbling received a $5,400.00 bill from the Township for the closure of Plain Grove North Liberty Road due to the alleged presence of debris on the road. (ECF No. 9 ¶ 52). The road in question was not closed during the time of the demolition or thereafter. (ECF No. 9 ¶ 53). Throughout 2023, Mr. Helbling and/or G&J received letters from the Township Solicitor, Raymond H. Bogaty, regarding the costs of the alleged road closure, claiming additional remediation to the Property was necessary due to the demolition of the Building. (ECF No. 9 ¶ 54). Plaintiff alleges that, throughout the entirety of this twenty-three-year time span and during the course of each interaction and dispute, Pebbles repeatedly lied about his position within the Township, presenting himself as the Township building code official and/or inspector, all in an effort to carry out an alleged vendetta against Mr. Helbling. (ECF No. 9 at ¶ 21, 56, 58).

Counts I and II of the Complaint assert claims for deprivation of constitutional rights while acting under the authority of state law, in violation of federal rights as protected by 42 U.S.C. § 1983. Count I alleges a deprivation of property without due process, amounting to a taking, under the Fifth and Fourteenth Amendments to the United States Constitution against Pebbles. Count II alleges a deprivation of those same constitutional rights against the Township. Lastly, Count III asserts a claim for Intentional Infliction of Emotional Distress under Pennsylvania law against Pebbles.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    Discussion

As noted, Plaintiff asserts claims against Defendants pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7

42 U.S.C. § 1983. The Fifth Amendment affords all citizens the right to due process of law, including just compensation for the taking of property, providing that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST., AMEND. V. Through the Fourteenth Amendment's adoption of The Due Process Clause, the Takings Clause is also obligatory on the States:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONT., AMEND. XIV, § 1. Therefore, Plaintiff is attempting to assert a claim for deprivation of rights and privileges afforded by the Constitution, which are grounded in the Fifth Amendment and applied to the states under the Fourteenth Amendment.

### A. Count I: Deprivation of Constitutional Rights

Defendants argue that Plaintiff's Section 1983 claims should be dismissed for failure to plead a deprivation of a constitutional right. Defendants further seek dismissal on the basis that Plaintiff/Mr. Helbling has not suffered an unconstitutional taking because she fails to allege a *per se* or regulatory taking. Defendants also argue that Plaintiff's Section 1983 claim against Pebbles fails because Pebbles is entitled to qualified immunity.

Plaintiff argues that the well-pled facts state a deprivation of constitutional rights, specifically a taking under the Due Process Clause. Plaintiff also argues that Pebbles is not entitled to qualified immunity under the circumstances presented herein.

### 1. Substantive Due Process

Defendants argue that Plaintiff fails to allege a violation of Plaintiff's/Mr. Helbling's substantive due process rights because the Complaint fails to plead conscience-shocking conduct. To sustain a claim for violation of substantive due process, a plaintiff must prove: (1) the interest at issue is protected by the substantive due process clause; and (2) the government's deprivation of that protected interest shocks the conscience. *Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F.Supp.3d 571, 590 (M.D. Pa. 2022). Conduct which "shocks the conscience" only extends to the most egregious official conduct, including improper motives or unconstitutional actions. *Id*. When considering conscience-shocking conduct in the context of land-use, the Third Circuit has explained that courts traditionally look for evidence of "[…] corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials," and has held that a mere disagreement over zoning or planning rules is not sufficiently "conscience-shocking." *Id*. at 591. (citing *Button v. Snelson*, 679 F.App'x. 150, 154 (3d Cir. 2017)). The Third Circuit has further explained that land-use and zoning decisions are matters of local concern, and that these disputes should not be converted into substantive due process claims on the basis that the alleged government official acted with "improper" motives. *United Artists Theatre Cir. Inc. v. Twp. of Warrington, PA*, 316 F3d. 392, 402 (3d Cir. 2003). Whether conduct is "conscience-shocking" is made on a case-by-case basis, with no automatically qualifying action. *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999).

In the present matter, the Complaint alleges that Pebbles acted with a "vendetta" toward Plaintiff. (ECF No. 9 at ¶ 58). Under the standard of Rule 12(b)(6), all facts that are not conclusory are to be read in a light most favorable to the non-moving party, and as such, this could rise to the level required to shock the conscience if Pebbles intended to harm Plaintiff/Mr. Helbling. *See Assocs. In Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F.Supp.2d 633, 656 (E.D. Pa.

2003). The Takings Clause under the Fifth and Fourteenth Amendments provides that property is afforded protection of substantive due process. However, the Third Circuit and the United States District Court for the Eastern District of Pennsylvania have traditionally held that zoning decisions – delays, denials, and misrepresentations – even if seemingly unfair or motivated by animus, do not rise to the level of constitutional violation required to shock the conscience. *See Levin v. Upper Makefield Twp, Bucks County, Pa.*, 90 F.App'x. 653 (3d Cir. 2004); *Giuliani v. Springfield Twp.*, 238 F.Supp.3d 670 (E.D. Pa. 2017); *Thorpe v. Upper Makefield Twp.*, 271 F.Supp.3d 750 (E.D. Pa. 2017).

In this matter, Plaintiff alleges disputes that Pebbles had with two separate contractors over a twenty-year span. Paragraph 13 of the Complaint describes the first dispute regarding the Property, arising between Pebbles and Hughes in or around the year 2000. (ECF No. 9 at ¶ 13). The Complaint goes on to detail the later disputes between Pebbles and the new contractor, G&J, in or around the year 2020. (ECF No. 9 at ¶ 23). Pebbles informed G&J of the previous dispute between he and Hughes, eventually informing G&J that renovations to the Building on the Property would never be completed. (ECF No. 9 at ¶ 24, 32). Additionally, Pebbles repeatedly, and arbitrarily, stopped work on the Property on several occasions, ordering additional unnecessary work to be completed. (ECF No. 9 at ¶ 25). Furthermore, Plaintiff alleges that Pebbles repeatedly required permits for work to be performed, only to deny the issuance of a permit to complete said additional work. (ECF No. 9 at ¶ 26). Following installation of a 15-inch pipe for a septic tank at Pebbles's request, the pipe was later removed by an unknown party. As alleged, only G&J and the Township possessed the equipment necessary to remove that pipe at that time. (ECF No. 9 at ¶ 27-31). Around the time at which these disputes continued in 2023, Mr. Helbling was in the hospital. (ECF No. 9 at ¶ 43). During Helbling's hospitalization, Pebbles demanded the

demolition of the barn and the Building, stating that Mr. Helbling would face fines of $5000.00 a day, a lien on the Property, and jail time. (ECF. No. 9 at ¶ 49). Seeing no other option, Mr. Helbling complied with Pebbles's verbal demands and contracted with G&J to perform the work at an emergency, increased rate. (ECF No. 9 at ¶ 50). Plaintiff alleges that the Defendants continued to harass G&J and/or Mr. Helbling following the ordered demolition of the Building, assessing additional fines ($5,400.00) for debris allegedly present on a nearby road, purportedly resulting in a road closure that never, in fact, took place. (ECF No. 9 ¶ 51, 52, 54). Lastly, in all of these interactions and disputes, Pebbles is alleged to have repeatedly lied about his position within the Township, presenting himself as the Township building code official and/or inspector, to carry out an alleged vendetta. (ECF No. 9 at ¶ 21, 56, 58).

For these reasons, the Motion to Dismiss is denied without prejudice as to the substantive due process issue in Count I, as Plaintiff has pled conscience-shocking conduct through the repeated actions of the Defendants. These are ultimately issues of fact to be resolved through discovery, and Defendants may properly revisit the question of whether Mr. Helbling suffered a violation of his substantive due process in a motion for summary judgment.

### 2. Procedural Due Process

Defendants argue that Plaintiff fails to set forth a violation of Plaintiff's/Mr. Helbling's procedural due process rights because Mr. Helbling failed to take advantage of the local/state procedures available to him. In assessing a claim for violation of procedural due process under 42 U.S.C § 1983, courts employ a two-step analysis determining whether: (1) the individual interests at stake fall under the Fourteenth Amendment's protection of life, liberty, or property; and (2) whether the procedures in place afforded the plaintiff "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (citing *Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir.

1984)). A plaintiff must exhaust all procedural options before claiming a violation of due process, unless those procedures are unavailable or grossly inadequate. *Id*. The adequacy of state procedures is assessed using a balancing test derived from *Mathews v. Eldridge*, 424 U.S. 319 (1976). Courts consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id*. at 335.

Further, due process requires that property owners be afforded notice and an opportunity to be heard before their property is taken. Notice is to be reasonably calculated under the given circumstances and must convey the required information. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The fundamental requirement of due process is that some form of hearing take place, and that the opportunity to be heard is "at a meaningful time in a meaningful manner," that is, when deprivation can still be prevented. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). However, procedural due process rules only protect individuals from mistaken or unjustified deprivation of property, not a rightful action of government authority resulting in deprivation. *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

Defendants argue that Plaintiff/Mr. Helbling had two procedural safeguards available to pursue remedies under state law forums: the Uniform Construction Code (UCC) (codified as the Pennsylvania Construction Code. 35 P.S. §§ 7210.101, et esq) and its regulation propagated under 34 Pa. Code §§ 401.1, et esq. and the Local Agency Law, 2 Pa. C.S.A. § 551, et esq. However, the United States Supreme Court held in *Knick v. Township of Scott, Pennsylvania*, that an actionable takings claim accrues under the Fifth Amendment as soon as the government takes an individual's

property without just compensation. 588 U.S. 180, 185 (2019). The Supreme Court held that when a plaintiff has suffered a taking of their property without compensation they can bring a Section 1983 claim in federal court at that time. *Id*. The Court held that the plaintiff need not exhaust all available state remedies, as it "imposes an unjustifiable burden on takings plaintiffs." *Id*. Therefore, a takings plaintiff may seek compensation in federal court without first being denied a remedy at the state level. The government is not required to compensate the property owner in advance, nor should they fear that their action constitutes an abuse of police power; however, a property owner has a claim for violation of the Takings Clause as soon as their property is taken by a government entity without compensation. *Id*.

Even if *Knick* were inapplicable, the Court notes that, in moving for dismissal, Defendants rely on public safety and welfare as the bases for the demolition of the Building. Under 34 Pa. Code § 403.84, written notice deeming the structure or equipment unsafe must be served on the owner or the owner's agent. However, as alleged in the Complaint, Defendants provided no written notice, nor has there been any reference to written notice in the parties' briefing. Therefore, as alleged, Mr. Helbling could not avail himself of all possible remedies under state law, as Defendants failed to provide written notice, rendering procedural options unavailable to him. In any event, this Court is bound by the ruling of the United States Supreme Court in *Knick v. Twp. of Scott, PA*, as stated above.

In light of this decision, the Motion to Dismiss is denied without prejudice as to the issue of procedural due process under Count I.

### 3. Per Se Taking

Defendants argue that the facts alleged in the Complaint fail to amount to a *per se* taking. Courts have traditionally recognized two instances in which regulatory actions amount to a *per se*

taking under the Fifth and Fourteenth Amendments: (1) an owner suffers a permanent physical invasion of their land as a result of government action; and (2) a regulation completely deprives an owner of "*all* economically beneficial us[e]" of their land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). Additionally, a plaintiff must show that the Government's action has affected a "legally cognizable property interest." *Prometheus Radio Project v. F.C.C.*, 373 F.3d 372, 428 (3d Cir. 2004). Lastly, an owner generally has no property interest in abandoned property. *Temple-Inland, Inc. v. Cook*, 192 F.Supp.3d 527, 551 (D. Del. 2016).

Plaintiff does not allege a permanent physical invasion of the Property in the Complaint as a result of the Defendants' actions. Moreover, courts have held that *all* economically beneficial use of the land must be diminished, not merely substantially reduced, in order for a regulatory action to constitute a "taking" under the Fifth and Fourteenth Amendments. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). At this juncture in the litigation, the legal standard for a motion to dismiss requires all facts to be read in a light most favorable to the non-moving party. Plaintiff alleges that the Property was left virtually valueless due to Pebbles's persistent actions. (ECF No. 9 at ¶ 74). Additionally, given the facts alleged in the Complaint, Pebbles made it virtually impossible for work of any kind to be completed on the Property, given the repeated stop-work orders, refusals to issue permits, and demands for additional and unnecessary work.

For these reasons, the Motion to Dismiss is denied regarding a *per se* taking under Count I. Defendants are permitted to revisit the issue in a motion for summary judgment.

### 4. *Penn Central* Factors

Defendants argue that the facts alleged in the Complaint fail to state a claim under the framework outlined by the Supreme Court in *Penn Central*, which sets forth the standard for determining whether a taking has occurred under the Fifth Amendment. These factors include: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-539 (2005). In *Penn Central*, the Supreme Court acknowledged that it had not yet established a set formula for assessing regulatory takings claims, but it highlighted the various factors above as predominantly important. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978).

The first factor analyzes how the regulation affects the value of the property and the financial burden incurred by the property owner. The economic impact factor generally requires substantial diminution in property value or evident economic harm to support a takings claim, rather than speculative or minor losses. *Lucas*, 505 U.S. at 1017-1019. The second factor involves determining whether the property owner had reasonable expectations of using the property in a certain way and whether the regulation disrupts those expectations. That test requires substantial interference with an investment-backed expectation. As property rights are necessary to preserve freedom, the interference must amount to more than a mere infringement of a single right in the property owner's bundle. *Murr v. Wisconsin*, 582 U.S. 383, 394 (2017). The third factor evaluates whether the regulation constitutes a physical invasion or simply reallocates the benefits and burdens of economic activity to serve the public interest. *Penn Central*, 438 U.S. at 124.

Here, Plaintiff has demonstrated evident economic harm to support a takings claim. The Complaint alleges that Mr. Helbling contracted with G&J for substantial work at the Property, including demolition and reconstruction of a foundation wall and the installation of new electrical

equipment, a furnace, and ductwork for $29,000.00 and $20,000.00. (ECF No. 9 at ¶ 18, 19). The Complaint also alleges that Mr. Helbling and G&J contracted for the demolition of the barn and renovations to the Building located on the Property for $46,800.00, only after Pebbles demanded the same, followed by Pebbles's issuance of a stop-work order due to his denial of the permit required to perform the demolition, resulting in more than a year of lapsed time. (ECF No. 9 at ¶ 33-37). Additionally, Plaintiff was assessed a $5,400.00 fine because of the debris from the ordered demolition. In total, Plaintiff alleges a total loss of $95,800.00, as well as the value of the Building destroyed. (ECF No. 9 at ¶ 71). As alleged, the actions of the Defendants caused substantial and evident economic harm to the Plaintiff, which is not minor or speculative. Plaintiff has set forth plausible facts to demonstrate an economic impact.

In analyzing the second element, Plaintiff alleges that Mr. Helbling planned on turning the Building on the Property into apartment-style living for the nearby universities. (ECF No. 9 at ¶ 16). Although detailed plans were not provided, in viewing all facts in a light most favorable to the non-moving party, Plaintiff alleges interference with a distinct investment-backed expectation. Defendants preserve the right to raise this defense in a motion for summary judgment.

As to the third element, the actions of the Defendants do not amount to a physical invasion, and, while Plaintiff does not allege a physical invasion, Plaintiff does assert a taking. In counter, the Defendants again rely on argument that the Building was a safety hazard and, therefore, argue that their actions constituted a use of government police power not amounting to a taking. This alleviation of a public safety concern could be said to serve the public interest; however, Defendants fail to identify the safety issue. As stated above, the Complaint does not allege that a safety violation or final written notice of such was issued, as is required under 34 Pa. Code § 403.84. *See* 34 Pa. Code § 403.84 ("A building code official shall serve a written notice on the

owner or owner's agent of the building, structure or equipment that is unsafe under this section. The notice shall contain the order to vacate the building, structure or seal the equipment out of service *and state the unsafe conditions, required repairs or improvements*." (emphasis added)). Therefore, the Defendants have failed to properly assert their police powers at this juncture; as such, relying on that portion of the applicable code is premature and possibly meritless.

Plaintiff has satisfied the plausibility standard necessary to survive a motion to dismiss concerning the *Penn Central* framework. Therefore, at this juncture, the Motion to Dismiss is denied without prejudice regarding a takings claim under the *Penn Central* framework in Count I. Defendants are permitted to re-raise the defense in a motion for summary judgment.

### 5. Qualified Immunity

Defendants assert that Count I fails as to Pebbles because he is entitled to qualified immunity. The Supreme Court has developed a two-step process for analyzing whether a government official is protected under qualified immunity. *See*, *Saucier v. Katz*, 533 U.S. 194 (2001). Later courts, such as *Pearson v. Callahan*, concluded that the sequence in which courts apply the two-step process is no longer mandatory, and that district courts and the courts of appeals should be permitted to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

Therefore, courts must decide if the facts alleged by the plaintiff meet the standard necessary to claim violation of a constitutional right. *Id*. at 232. Additionally, courts must determine if the right in question was "'clearly established' at the time of defendant's alleged misconduct." *Id*. *Saucier* goes on to state that a clearly established right is assessed through an objective lens as to "whether it would be clear to a reasonable officer that his conduct was unlawful

in the situation […]." 533 U.S. at 202. Other courts have defined these rights as "so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned'" *Lobozzo v. Colorado Dept. of Corrections*, 429 F.App'x. 707, 710 (10th Cir. 2011) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172-173 (D.C. Cir. 1983)). The right(s) allegedly violated must be specified to the appropriate level to determine if it was clearly established. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Plaintiff asserts a violation of the Takings Clause under the Fifth and Fourteenth Amendments, resulting in a violation of Mr. Helbling's Due Process Rights. Plaintiff alleges that he suffered a taking without an adequate opportunity to be heard, and further alleges that Pebbles, falsely holding himself out as a building code official, engaged in a pattern of conduct that ultimately amounted to a taking over a period of years only because of a vendetta he maintained against Mr. Helbling, and that Pebbles acted with an intent to harm, as opposed to sincere concern over building code violations. Accordingly, the right at issue is the right to be free from a taking, without an adequate opportunity to be heard, motivated by an intent to harm on the official's part. The Court finds that this right was clearly established as of the date of taking in this case.

The Supreme Court has long recognized the Takings Clause and the Due Process Clause as clearly established constitutional rights. The Supreme Court has repeatedly ruled that the Civil Rights Act of 1871 ensures access to a federal forum for individuals alleging unconstitutional conduct by state officials, and that exhausting state remedies is not required before pursuing a claim under 42 U.S.C. § 1983. *Knick*, 588 U.S. at 185; *Heck v. Humphrey*, 512 U.S. 477, 480 (1994); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 502 (1982). Therefore, the Supreme Court has ruled that takings claims under Section 1983 should be afforded the same rights as other claims under the United States Constitution. Similarly, substantive and procedural due process safeguards

under the Fifth and Fourteenth Amendments have been consistently established and upheld in cases involving deprivation or invasion of property without just compensation, furthering these rights as clearly defined. *See Whittaker v. County of Lawrence*, 674 F.Supp.2d 668, 696 (W.D. Pa. 2009).

The constitutional rights Plaintiff alleges were violated by the Defendants are clearly established and have long been protected by the courts of the United States. *See*, *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978); *see also Nicolette v. Caruso*, 315 F. Supp. 2d 710, 723 (W.D. Pa. 2003) (finding allegations sufficient to allege conscience shocking conduct where Plaintiff described an "alleged a course of conduct undertaken by defendants with the intent to harm and restrict his ability to carry out his business on the parcel of land he leased in Findlay Township."); *Red Carpet Inn, LLC v. Kratz*, No. 3:CV-08-1347, 2010 WL 3293336, at *8 (M.D. Pa. Aug. 19, 2010) ("The Court finds that whether Plaintiff had sufficient notice under the due process clause regarding the Code violations which lead to Defendant Kratz's posting and closing Plaintiff's buildings is a disputed material fact which the jury should decide with respect to Plaintiff's Fourteenth Amendment procedural due process claim."). Furthermore, a reasonable individual in such a position would be aware of these rights, as they are indisputable and unquestioned. Defendants continue to rely on the assertion that the Building was a safety issue; but, as alleged, they failed to provide written notice of such, as is required. *See* 34 Pa. Code § 403.84. Under the facts alleged in the Complaint, Plaintiff has pled, with specificity, a violation of an established constitutional right. As such, the Court denies the Motion to Dismiss as to Pebbles's pursuit of a qualified immunity defense under Count I. This

issue is inherently fact sensitive, and Defendants may revisit the issue of qualified immunity as a basis for relief in the context of a Motion for Summary Judgment

### B. Count II: *Monell* Liability

Defendants argue that Plaintiff's Section 1983 claim against the Township should be dismissed for failure to plead a policy, practice, or custom of the Township that directly caused Plaintiff's alleged constitutional harm. In *Monell v. Department of Social Services of City of New York*, the United States Supreme Court decided that Congress intended for municipalities to be included among those to whom Section 1983 applies. 436 U.S. 658, 690 (1978). The Court went on to say that local governments may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id*. at 690-691. However, the Court concluded that a "municipality cannot be held liable *solely* because it employs a tortfeasor," meaning liability under Section 1983 cannot be applied through a *respondeat superior* theory. *Id*. at 691 (emphasis original). A plaintiff must allege that the injury was a direct cause of government policy or custom, through lawmakers or "by those whose edicts or acts may fairly be said to represent official policy" to hold a government entity liable under Section 1983. *Id*. at 694.

Therefore, as stated in *Wilson v. City of Philadelphia*, a successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. 177 F.Supp.3d 885, 908 (E.D. Pa. 2016). A policy requires proof of affirmative or final action by a policymaker, while a custom is established when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990). To establish proximate

causation, the plaintiff must prove a "plausible nexus" or "affirmative link" between the custom or policy and the specific constitutional deprivation at issue. *Id*. Deliberate indifference to a plaintiff's constitutional right is established when "(1) municipal policymakers know that employees will confront a particular situation[;] (2) the situation involves a difficult choice or a history of employees mishandling[;] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011).

Plaintiff alleges at paragraph 81 of the Complaint that the Township maintained an official policy or custom allowing Pebbles to falsely and improperly act as the Township's building code inspector. (ECF No. 9 at ¶ 81). Paragraphs 84-86 of the Complaint allege a constitutional deprivation under the Fifth and Fourteenth Amendments, stating that the Township's policy or custom was the direct cause of significant damage, including diminution in value of the Property. For these reasons, this Court denies the Motion to Dismiss Count II without prejudice, as the facts read in a light most favorable to the Plaintiff tend to establish municipal liability. Defendants are permitted to re-raise this defense in a motion for summary judgment.

### C. Count III: IIED

Defendants argue that Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim against Pebbles should be dismissed for failure to plead extreme and outrageous conduct. To sustain a claim for IIED in Pennsylvania, the plaintiff must establish four elements: (1) extreme and outrageous conduct, (2) that is intentional or reckless; (3) causing emotional distress, and (4) the distress must be severe. *Brown v. American Airlines, Inc.*, 723 F.Supp.3d 411, 423 (E.D. Pa. 2024). Additionally, the complaint must allege that the plaintiff suffered physical harm resulting from the conduct. *Id*. Physical harm includes "physical manifestations of emotional suffering such

as depression, nightmares, stress and anxiety." *Id*. The court must first determine if the defendant's conduct rises to the level of extreme and outrageous, giving discretion to the finder of fact. *See*, *Butler v. Upper Merion Township*, 765 F.Supp.3d 441 (E.D. Pa. 2025); *Smith v. RB Distribution, Inc.*, 515 F.Supp.3d 311, 319 (E.D. Pa. 2021). The determination of whether conduct was intentional or reckless, whether the defendant's conduct caused emotional distress, and the severity of the emotional distress are questions of fact for the jury.

This Court must first make a determination as to whether Pebbles's conduct was extreme and outrageous, and, traditionally, the types of acts at issue do not rise to the level necessary. *See Butler v. Upper Merion Township*, 765 F.Supp.3d 441 (E.D. Pa. 2025); *Lane v. Cole*, 88 F.Supp.2d 402 (E.D. Pa. 2000); *McCormick v. Camp Pocono Ridge, Inc.*, 760 F.Supp. 1113 (M.D. Pa. 1991). However, in such cases, the court gives deference to the finder of fact. The concept of extreme and outrageous conduct is similar to that of conscience-shocking conduct in a claim for a violation of substantive due process. As this Court has already ruled that Plaintiff has pled plausible facts to satisfy the "shock the conscience" standard, it too finds that Pebbles's actions, as alleged, amount to the level of extreme and outrageous conduct sufficient to sustain an IIED claim. Pebbles's alleged lies, repeated harassment and threats, and arbitrary stop-work orders show a pattern of extreme and outrageous conduct occurring on multiple occasions over a twenty-year span. Additionally, Plaintiff has alleged physical harm in that he suffered great anxiety, stress, concern, and distress at the hands of Pebbles's demands. (ECF No. 9 at ¶ 44). It will be for the finder of fact to determine whether or not Pebbles's conduct was intentional or reckless, causing severe emotional distress.

For the reasons stated above, and at this juncture, this Court denies the Motion to Dismiss as to Count III, as Plaintiff has pled plausible facts amounting to extreme and outrageous conduct by Pebbles. Defendants are permitted to re-raise the issue in a motion for summary judgment.

## IV.    Conclusion

For the reasons stated herein, the Motion to Dismiss will be denied.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 16, 2025

cc: All counsel of record